LDA

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **In re KUGEL MESH HERNIA PATCH PRODUCTS LIABILITY LITIGATION** | ) | **MDL Docket No.: 07-1842-ML** |
| **WALTER F. REHSE, JR.,** | ) | **Case No.:** CA 08 287 ML |
| **Plaintiff,** | ) | |
| **vs.** | ) | |
| **DAVOL, INC. AND C. R. BARD, Inc.,** | ) | **DEMAND FOR JURY TRIAL** |
| **Defendants.** | ) | |

## ORIGINAL COMPLAINT

Plaintiff WALTER F. REHSE, JR. ("Plaintiff" or "Mr. Rehse") by and through his attorneys brings this action alleging the following, upon information and belief:

### I. Parties

1. Plaintiff is an individual and is a citizen and resident of Ida Grove, Ida County, Iowa.

2. Defendant DAVOL INC. ("DAVOL") is a corporation that is incorporated under the laws of the State of Rhode Island. DAVOL has its principal place of business in the State of Rhode Island. It manufactures the Kugel® Hernia Patch, Bard® Kugel® Hernia Patch, and the Bard Composix® Kugel Mesh Patch (hereinafter "Kugel Patch") at 100 Sockanosset Crossroad, Cranston, Rhode Island. DAVOL has a registered agent in Rhode

Island at CT Corporation System, 10 Weybosset St., Providence, Rhode Island. DAVOL focuses its business on products in key surgical specialties, including hernia repair, hemostasis, orthopedics, and laparoscopy.

3. Defendant C. R. BARD INC. ("BARD") is a corporation that is incorporated under the laws of the State of New Jersey. It is the corporate parent/stockholder of DAVOL and participates in the manufacture, sale and distribution of the Kugel Patch. It also manufactures and supplies DAVOL with material that forms part of the Kugel Patch. BARD at all times relevant did substantial and continuous business in the State of Rhode Island.

**II. Jurisdiction**

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (a) because the case is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. This Court has authority to grant declaratory, injunctive, and monetary relief pursuant to 28 U.S.C. §§ 1343, 2201, and 2202, and to award costs and attorneys' fees under 28 U.S.C. § 2412.

6. This Court has personal jurisdiction over Defendants because they are either incorporated in Rhode Island or, at all times relevant, conducted substantial and continuous business in the State of Rhode Island designing, manufacturing, and/or distributing the defective product that is the subject of this action.

## III. Facts

7. The Kugel Patch is used to repair ventral hernias, or hernias of the abdominal region. The Kugel Patch is made of two pieces of mesh that surround a flexible plastic ring. The surgeon places the mesh patch in a small incision. The surgeon folds the patch and places it at the site of the hernia. The released ring is then designed to spring back into its original shape, flattening the patch. The mesh-like material serves as a substrate, allowing the hernia patient's own tissue to grow and assist in healing the hernia.

8. The Kugel Patch is manufactured by BARD and their subsidiary, DAVOL, who owns the patent on the device.

9. The Defendants submitted their 510k Application to the Federal Drug Administration (hereinafter referred to as the "FDA") on January 22, 2001. Following this 510k Application the Kugel Patch was authorized by the FDA as a Class II medical device.

10. Soon after the Kugel Patches were placed on the market, Defendants began receiving actual notices Kugel Patch defects and failures. Not only was there no device history record (DHR) review performed—as called for by protocol—but also Defendants actively and intentionally concealed these notices concerning defective and dangerous condition(s) associated with the Kugel Patches from Plaintiffs, Plaintiffs' physicians, and the general public.

11. The Kugel Patches present and constitute an unreasonable risk of danger and injury in the following respects:

a. the memory recoil of the Kugel patch is likely to malfunction after being implanted;

b. the Kugel Patch was not properly manufactured;

c. the Kugel Patch as defectively designed;

d. the Kugel patch did not perform as safely as on ordinary consumer/patient would expect;

e. the Kugel patch was inadequate or insufficient to maintain its integrity during normal use after implantation in the consumer/patient; and

f. such further and additional defects as discovery and evidence reveal.

12. After the defective and dangerous Kugel Patch was already placed on the market, Defendants conducted physician screenings and reviews beginning in 2002. According to protocol, these surveys and reviews were needed before placing the device on the open market. Furthermore, an Establishment Inspection Report ("EIR") conducted by the FDA in 2006 found that the post market survey validation process of the device was incomplete and failed to include all the data from the physicians surveyed during this time. Whether intentionally or negligently, Defendants failed to properly conduct and monitor their own post market design validation physician surveys including those which demonstrated unfavorable or "dissatisfied" results. Defendants actively and intentionally these complaints and concerns of the physician surveyors from Plaintiffs, Plaintiffs' surgeons, and the public at large.

13. During the spring and summer period of 2005, there was a substantial increase in the number of complaints with the Kugel Patch. Defendants' corporate executives were notified and thus made aware of these complaints. Nevertheless, in spite of their

knowledge of increasing complaints and complications, Defendants waited until August 30, 2005, to initiate a partial Kugel Patch manufacturing hold.

14. As a result of the dangerous and defective conditions of the Kugel Patch, and the numerous serious injuries that resulted, and it was not until December 8, 2005, that the Defendants finally commenced a distribution hold. (Defendants have since admitted that these product quality hold and release procedures were not applied on a timely basis.) Furthermore, Defendants actively and intentionally chose not to immediately inform Plaintiff, Plaintiff's physicians, the FDA, and all other individuals who had been implanted or would be implanted with Kugel Patches of the numerous complaints and complications they were on notice of, nor of the holds in effect.

15. On December 22, 2005, Defendants recalled many sizes of Kugel Patches under a Class I recall notice. An FDA Class I recall is issued for problems related to medical devices that are potentially life-threatening or could cause a serious risk to the health of the patients implanted with the devices.

16. The FDA conducted the aforementioned EIR investigations in January and February of 2006. The results of these investigations determined, among other things, that Defendants:

i. had excluded ring failure events which should have been included from their complication database, reports, and recall notices;

ii. misidentified numerous Kugel Patch complication events;

iii. failed to apply the product quality hold and release procedure on a timely basis;

iv. failed to properly follow the procedures for conducting design validation review;

v. failed to identify all the actions necessary to correct and prevent the recurrence of further ring break and Kugel Patch complications; specifically, they provided no justification for including only the Extra Large Kugel Patch sizes in the December 2005 recall;

vi. failed to provide full information which they knew regarding numerous Kugel Patch complaints;

vii. failed to actually perform strength testing on memory recoil rings for all sizes of Kugel patch before putting them into the stream of commerce;

viii. failed to maintain appropriate sources for quality data to identify, track, and trend existing and potential causes for the ring failures and Kugel Patch complaints resulting in numerous inconsistencies and errors in the raw data and from the actual complaints and what was placed in the electronic databases.

17. On March 24, 2006, the initial Class I recall on the Kugel Patch was expanded to include several more sizes of the patch and numerous additional lots of the defective hernia mesh product.

18. On January 10, 2007, the existing recall on the Kugel Patch was again expanded to encompass further production lots of the defective hernia mesh product. As of that date, the total number of recalled Kugel Patches that were distributed amounted to more than 100,000 units.

19. At all times mentioned, Defendants knew, or in the exercise of reasonable care should have known, that the aforesaid products were of such a nature that they were not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied, prepared and/or provided with proper warnings, were not suitable for the purpose they were intended and were unreasonably likely to injure the products' user.

20. Upon information and belief Defendants failed to comply with the FDA application and reporting requirements.

21. Upon information and belief Defendants were aware of the high degree of complication and failure rate associated with their Kugel Patch before it was recalled.

22. Upon information and belief Defendants were aware of the defect in manufacture and design prior to the recall of their Kugel Patch.

23. Upon information and belief, the complications and failures associated with the Kugel Patches are not limited to the sizes which Defendants has already recalled.

24. Upon information and belief, Defendants were aware of the defects in the manufacture and design of the non-recalled Kugel Patch sizes and chose not to issue a recall on all Kugel Patches in the face of the high degree of complication and failure rates.

## IV. Plaintiff's Experience

25. On August 11, 2005, Mr. Rehse underwent an incisional hernia repair surgery at Siouxland Surgery Center in Dakota Dunes, South Dakota. Mr. Rehse's hernia was repaired with a Bard Composix Kugel Hernia Patch.

26. The Kugel Patch implanted in Mr. Rehse was designed, manufactured, sold and distributed by Defendants to be used by surgeons for hernia repair surgeries and was further represented by Defendants to be an appropriate, cost-effective and suitable product for such purpose.

27. At the time of his operation, Mr. Rehse was not informed of, and had no knowledge of, the complaints, known complications and risks associated with the Kugel Patch, nor was Mr. Rehse on notice that the Kugel Patch that was inserted into his body was defective.

28. Still unaware of the Kugel Patch recalls or the complications and defects known by Defendants to be associated with the Kugel Patches, Mr. Rehse sought medical treatment.

29. Approximately five (5) months after his implant surgery of August 2005, Mr. Rehse began experiencing sharp abdominal pain and swelling which progressively got worse. His pain was so severe that he went in for pain relief and treatment.

30. On January 27, 2006, Mr. Rehse was admitted to Siouxland Surgery Center for an incisional herniorrhaphy with removal of his Kugel Patch. During the procedure, a significant hernia just lateral to the edge of the Kugel Patch was discovered. The Kugel Patch was completely removed and a large 5"x7" Bard Composix Kugel Hernia Patch was then placed in Mr. Rehse's abdomen. On January 29, 2006, Mr. Rehse was discharged from Siouxland Surgery Center.

31. Soon after his surgery of January 2006, Mr. Rehse started experiencing pain and discomfort in his abdominal region. Mr. Rehse lived with this pain for several months until he was schedule for yet another surgery.

32. On July 7, 2006, Mr. Rehse was re-admitted to Siouxland Surgery Center for a laparoscopic exam. During the laparoscopic procedure, Mr. Rehse's physician discovered a recurrent hernia and that the second Kugel Patch had folded up on itself and had a single loop of small intestine which could not have been safely removed without the

opening of the abdomen. The laparoscopic exam was abandoned and the abdomen was opened up. Several adhesions were discovered and taken down and the Kugel Patch was completely excised. A 12"x12" Parietex Mesh was contoured and attached to the anterior abdominal wall. Mr. Rehse was discharged from Siouxland Surgery Center on July 8, 2006.

34. In sum, Mr. Rehse was hospitalized at Siouxland Surgery Center for approximately seven (7) to ten (10) days for his Kugel Patch surgeries. During this time, Mr. Rehse underwent multiple surgeries as well as other procedures to correct the medical complications related to the defective Kugel Patches.

35. As a result of the two (2) defective Kugel Patches and surgeries it necessitated, Mr. Rehse has suffered and will continue to suffer physical pain and mental anguish.

36. Mr. Rehse also suffered from Situational Depression which was a direct result of both defective Kugel Patches.

37. Both defective Kugel Patches that caused the recurrent hernias in Mr. Rehse's abdomen have extremely inhibited Mr. Rehse's daily life.

38. As a result of both defective Kugel Patches, the recurrent hernias and the following surgeries, Mr. Rehse has been put on strict physical limitations by his primary care physician. These strict limitations have completely changed Mr. Rehse's work life. Mr. Rehse is restricted from heavy lifting and using his stomach muscles. These restrictions disable him from performing many of his duties as a farmer.

39. Mr. Rehse has also incurred substantial medical bills and has suffered loss of other monies due to both defective Kugel Patches that were implanted in his body.

## V. Causes of Action

### COUNT I: Negligence

41. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

42. Defendants were negligent to Mr. Rehse in the following respects:

43. Defendants at all times mentioned had a duty to properly manufacture, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use the Kugel Patch.

44. Defendants at all times mentioned knew or in the exercise of reasonable care should have known, that the Kugel Patch were of such a nature that they were not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold supplied, prepared and/or provided with the proper warnings, and were unreasonably likely to injure the Kugel Patch users.

45. Defendants so negligently and carelessly designed, manufactured, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine and supplied the Kugel Patch, that they were unreasonably dangerous and unsafe for the use and purpose for which it was intended.

46. Defendants were aware of the probable consequences of the Kugel Patch. Defendants knew or should have known the Kugel Patch would cause serious injury and they failed to disclose the known or knowable risks associated with the Kugel Patch. Furthermore, Defendants willfully and deliberately failed to avoid those consequences, and in doing so, Defendants acted in conscious disregard of the safety of Mr. Rehse.

47. Defendants owed a duty to Mr. Rehse to adequately warn him and his treating physicians of the risks of breakage, separation, tearing and splitting associated with the Kugel Patch and the resulting harm and risk it would cause patients.

48. Defendants breached their duty by failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, production, advertisement, marketing, promotion, distribution, and/or sale of the Composix Kugel Patch.

49. As a direct and proximate result of the duties breached, the Kugel Patch used in Mr. Rehse's hernia repair surgery failed, resulting in much pain and suffering, mental anguish, doctor visits, subsequent procedures, and hefty medical bills.

50. As a direct and proximate result of Defendants negligence, Mr. Rehse suffered severe pain, injuries and damages.

51. Defendants conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others

justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter Defendants and others from similar conduct in the future.

52. Wherefore, Plaintiff requests a judgment against Defendants for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT II: Violation of the R.I. Deceptive Trade Practices Act

53. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs as though fully set forth herein.

54. Defendants engaged in unfair and deceptive trading practices with Mr. Rehse in the following respects:

i. Defendants are merchants who study, test, design, manufacture, inspect, produce, market, promote, advertise, distribute and/or sell the Kugel Patch for hernia repair surgery;

ii. Defendants knowingly committed unfair and deceptive in their study, test, design, development, manufacture, inspection, production, marketing, promotion, advertising, distribution and/or sale of the Kugel Patch for hernia repair surgery; and

iii. Defendants knowingly committed unfair and deceptive trade practices when they failed to safely design and construct an effective Kugel Patch for hernia surgery.

55. Defendants knew or reasonably should have known that some Kugel Patches were at risk while they were engaging in the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and/or selling of

the Kugel Patch for hernia repair surgery. And specifically, Defendants knew or reasonably should have known that the Kugel Patches posed a significant risk of breakage, separation, migration, tearing and splitting after placement in the intra-abdominal space that posed the danger of severe harm and/or death to patients.

56. Despite their awareness of the risks posed by the Kugel Patches, Defendants did not inform the FDA nor the general public at large prior to the December 2005 recall of its knowledge concerning the patches susceptibility to failure and the dangers posed to patients of the Kugel Patches.

57. Indeed, in violation of the R.I. Deceptive Trade Practices Act, Defendants failed to give adequate warnings regarding the use and potential problems with such patches for hernia repair.

58. Defendants actions all occurred while they were engaged in trade and commerce, and all such conduct occurred during the course of their business.

59. Defendants conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge that they were failing and not performing as represented and intended showed complete indifference to or a conscious disregard for the safety of others justifies an award of additional damages for aggravating circumstances in a sum which will serve to deter Defendants, and others from similar conduct in the future.

60. Wherefore, Plaintiff requests a judgment against Defendants for damages in a sum permitted by statute together with interest on that amount at the legal rate from the date of

judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

**COUNT III: Strict Product Liability**

61. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs as though fully set forth herein.

62. Defendants are strictly liable to Plaintiff for the following respects:

63. Defendants designed, manufactured, assembled, distributed, conveyed and/or sold the Kugel Patch for hernia repair surgery.

64. The Kugel Patches subject to the Class I recall were defective because they failed to perform safe and effectively for the purpose they were originally designed. The Kugel Patch inserted into Mr. Rehse's body during his hernia repair surgery was a Class I recalled device that failed while in his body causing him to develop serious physical complications which ultimately led to need to have a subsequent surgery to remove the defective Kugel Patch.

65. At all times mentioned, the Kugel Patch was substantially in the same condition as when it left the possession of Defendants.

66. The Kugel Patches implanted into Mr. Rehse was being used in a manner reasonably anticipated at the time it was implanted in him by his surgeon.

67. The Kugel Patches, like the ones found in Mr. Rehse, at the time they left the possession of Defendants were inherently dangerous for their intended use and were unreasonably dangerous products which presented and constituted an unreasonable risk of danger and injury to Mr. Rehse as follows:

i. The Kugel Patch was sold in a defective condition by design and manufacture;

ii. The Kugel Patch as designed and manufactured was unsafe to Mr. Rehse;

iii. The Kugel Patch as designed and manufactured was unreasonably dangerous to Mr. Rehse;

iv. The Kugel Patch did not perform safely as an ordinary consumer/patient, like Mr. Rehse, would expect;

v. The Kugel Patch as designed and manufactured was unsafe for its intended use;

vi. Defendants failed to warn the end user about the dangers and risks of the product;

vii. Defendants knew the component parts of the Kugel Patch as implemented through design and/or manufacture could cause injury to the end user;

viii. Failing to implement an adequate, safe and effective "memory recoil ring" and/or its interaction with the mesh of the Kugel Patch to withstand the foreseeable stresses they would be subject to within the intra-abdominal space;

ix. Failing to avoid migration of the Kugel Patch and/or its components from the initial site of the hernia repair surgery; and,

x. Any other acts or failures to act by Defendants regarding the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and/or sale of Kugel Patches for hernia repair surgery as will be learned during discovery.

68. Defendants conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others

justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter Defendants and others from similar conduct in the future.

69. Wherefore, Plaintiff requests a judgment against Defendants for damages in a sum as permitted by statute together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

**COUNT IV: Negligent Infliction of Emotional Distress**

70. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs as though fully set forth herein.

71. Defendants are liable to Mr. Rehse for the negligent infliction of emotional distress in the following respects:

72. Mr. Rehse suffered severe emotional distress, which was as a result of Defendants' negligent conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or selling of the Kugel Patch for hernia repair surgery.

73. Mr. Rehse suffered severe emotional distress, which was as a result of Defendants negligent conduct in failing to adequately and safely design and construct an effective and safe Kugel Patch for hernia repair surgery.

74. Defendants conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended,

showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter Defendants and others from similar conduct in the future.

75. Wherefore, Plaintiff requests a judgment against Defendants for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

**COUNT V: Intentional Infliction of Emotional Distress**

76. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs as though fully set forth herein.

77. Defendants are liable to Mr. Rehse for the intentional infliction of emotional distress in the following respect:

78. Mr. Rehse suffered severe emotional distress, which was as a result of Defendants extreme outrageous, intentional, willful, and reckless conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or sale of the Kugel Patch for hernia repair surgery.

79. Mr. Rehse suffered severe emotional distress, which was as a result of DEFENDANT'S extreme outrageous, intentional, willful, and reckless conduct in failing to adequately and safely design and construct an effective and safe Kugel Patch for hernia repair surgery, in complete and reckless disregard of safety to Mr. Rehse.

80. Defendants conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter Defendants and others from similar conduct in the future.

81. Wherefore, Plaintiff requests a judgment against Defendants for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT VI: Breach of Implied Warranty

82. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs as though fully set forth herein.

83. Defendants are liable to Mr. Rehse for their breach of implied warranty in the following respects:

84. Defendants sold the Kugel Patch that was implanted in Mr. Rehse. Defendants impliedly warranted to Mr. Rehse, his physicians and health care providers that the Kugel Patch was of merchantable quality and safe for the use for which they were intended.

85. Defendants knew or reasonably should have known that the Kugel Patch at the time of sale was intended to be used for the purpose of surgically implanting them into the body for hernia repair.

86. Mr. Rehse, his physicians, and his health care providers reasonably relied on DEFENDANT'S judgment, indications and statements that the Kugel Patch was fit for such use.

87. When the Kugel Patches was distributed into the stream of commerce and sold by Defendants, they were unsafe for their intended use, and not of merchantable quality, as warranted by Defendants, in that they had very dangerous propensities when used as intended and implanted into a patient's body and, as a result, could cause serious injury of harm or death to the end user.

88. As a result of Defendants conduct and actions, Mr. Rehse suffered such injuries and damages.

89. As such, Defendants breached the implied warranty of merchantability are liable to Mr. Rehse for his injuries and the costs he incurred as a result from using the defective Kugel Patch.

90. Wherefore, Plaintiff requests a judgment against Defendants for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

**COUNT VII: Failure to Warn**

91. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs as though fully set forth herein.

92. In the course of business, Defendants designed, manufactured and sold the Kugel Patch to Siouxland Surgery Center in Dakota Dunes, South Dakota for hernia repair surgeries.

93. In performing Mr. Rehse's hernia repair surgeries, the operating physician used and inserted into Mr. Rehse two of the Kugel Patches that Defendants provided to Siouxland Surgery Center.

94. At the time of the design, manufacture and sale of the Kugel Patch, and more specifically at the time Mr. Rehse received his Kugel Patches, they were defective and unreasonably dangerous when put to their intended and reasonably anticipated use. Further, the Kugel Patches were not accompanied by proper warnings regarding significant adverse consequences associated with the Kugel Patch.

95. Defendants failed to provide any warnings, labels or instructions of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution. The reasonably foreseeable use of the products involved significant dangers not readily obvious to the ordinary user of the Kugel Patch devices. Defendants failed to warn of the known or knowable injuries associated with malfunction of the Kugel Patch, including but not limited to rupture of the patch and severe peritonitis and infection which would require subsequent surgical procedures and could result in severe injuries.

96. The dangerous and defective conditions in the Kugel Patches existed at the time they were delivered by the manufacturer to the distributor. At the time Mr. Rehse had hua hernia repair surgery, the Kugel Patch was in the same condition as when manufactured, distributed and sold.

97. Mr. Rehse did not know at the time of use of the Kugel Patch or at any time prior thereto, of the existence of the defects or dangerous propensities in the Kugel Patches.

98. Mr. Rehse suffered the aforementioned injuries and damages as a direct result of Defendants failure to warn.

99. As such, Defendants breached their duty to warn about known defects and are liable to Mr. Rehse for the injuries he sustained and the costs incurred as a result of using the Kugel Patch.

100. The conduct of Defendants in continuing to market, promote, sell and distribute the Kugel Patch after obtaining knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum which will serve to deter Defendants and others from similar conduct.

101. Wherefore, Plaintiff respectfully requests judgment in his favor and against Defendants for such amount that is determined to be fair and reasonable, for such other relief as may be fair and reasonable under the circumstances and for his costs.

**COUNT VIII: Fraud**

102. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs as though fully set forth herein.

103. In the course of business, Defendants designed, manufactured and sold the Kugel Patch for hernia repair surgeries.

104. At the time of the design, manufacture and sale of the Kugel Patch, and more specifically at the time Mr. Rehse received the Kugel Patch, they were defective and unreasonably dangerous when put to their intended and reasonably anticipated use. Further the Kugel Patches were not accompanied by proper warnings regarding significant adverse consequences associated with the Kugel Patch.

105. Defendants were aware of the dangerous and defective condition of the products and intentionally withheld this information from Mr. Rehse, Mr. Rehse's physicians, the FDA, and the general public even though these significant dangers were not readily obvious to the ordinary user of the products, even after a post surgical complication had arisen.

106. Defendants fraudulently represented to Mr. Rehse, Mr. Rehse's physicians, and the general public that the Kugel Patch was a safe and effective product even though they were fully aware of the dangerous and defective nature of the Kugel Patch which likely could, and would, cause injuries such as those suffered by Mr. Rehse.

107. Mr. Rehse and his physicians relied upon the fraudulent misrepresentations and concealments of Defendants and allowed for the defective Kugel Patches to be implanted.

108. As a direct and proximate result of Mr. Rehse's reliance on Defendants fraudulent misrepresentations and concealments, Mr. Rehse was seriously and permanently injured.

109. The conduct of Defendants in continuing to fraudulently market, promote, sell and distribute the Kugel Patch while fraudulently concealing knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum which will serve to deter Defendants and others from similar conduct.

110. Wherefore, Plaintiff respectfully requests judgment in his favor and against Defendants for such amount that is determined to be fair and reasonable, for such other relief as may be fair and reasonable under the circumstances and for his costs.

Dated this 23rd day of July, 2008

Mark Gemma, Esq.
GEMMA LAW ASSOCIATES
231 Reservoir Avenue
Providence, RI 02907
Phone: (401) 467-2300
Fax: (401) 467-8678

Susanne N. Scovern, Esq.
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco, CA 94105
Phone: (415) 568-2555
Fax: (415) 568-2556